**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH DiCLEMENTE,** *et al.,* | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:15-0596** |
| **v.** | : | **(JUDGE MANNION)** |
| **ADAMS OUTDOOR** | : | |
| **ADVERTISING, INC.,** | | |
| | : | |
| **Defendant** | | |

**M E M O R A N D U M**

Plaintiff Joseph DiClemente is an employee of defendant Adams

Outdoor Advertising, Inc., a company that owns and rents billboards and other

outdoor advertising space, and is paid an hourly wage. He is classified as

non-exempt from overtime pay requirements. Plaintiff often works over 40

hours per week and he reports his hours on defendant's electronic

timekeeping system. When plaintiff works over 40 hours per week, defendant

adjusts his time entries downward so that he is paid for working only 40 or

fewer hours per week. This practice by defendant occurs for its other

employees who are paid hourly wages. Additionally, defendant requires

plaintiff and other hourly employees to drive to area billboards during the

evening to report whether any lights need replacement, so-called "riding

lights." However, plaintiff and other hourly employees are not allowed to report

the time spent riding lights as hours they worked in defendant's timekeeping

system. As such, plaintiff and other hourly employees receive no

compensation for time spent riding lights despite the fact that this time is

generally performed in addition to their regular 40-hour workweek. Plaintiff claims that defendant's practices have caused him and other hourly employees to work many overtime hours without compensation in violation of the Fair Labor Standards Act mandates. Plaintiff has sued defendant under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act, on behalf of himself and other hourly employees. The parties now seek court approval of their settlement.

## I.    BACKGROUND

Plaintiff contends that he and the other hourly employees are owed overtime for any hours worked in excess of forty hours per week, as mandated by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, *et seq*., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101, *et seq*. Plaintiff brought suit against defendant on March 24, 2015, (Doc. 1), bringing a claim for violations of the FLSA's overtime provision, 29 U.S.C. §207(a)(1), and a claim for violations of the PMWA's overtime provision, 43 P.S. §331.104(c). The FLSA claim was brought as a collective action pursuant to 29 U.S.C. §216(b). The PMWA actions was brought as a class action pursuant to Fed.R.Civ.P. 23. Plaintiff filed a motion for an extension of time for the class certification deadline, (Doc. 9), and it was granted by the court and postponed until a later date to be determined. (Doc. 12). The parties later stipulated that all individuals who, during any workweek

since March 24, 2012, were employed by defendant in Pennsylvania and paid, in whole or in part, on an hourly basis were conditionally certified as a collective pursuant to 29 U.S.C. §216(b). The court approved of the stipulation. (Doc. 18). Plaintiff withdrew the Rule 23 class action claim, but the parties acknowledged that plaintiffs who opt into the collective action join the action for both the FLSA and PMWA claims. (Id.). In addition to the original plaintiff, five other hourly employees opted in to the collective action. As such, there are six plaintiffs in this case.

On June 6, 2016, plaintiffs filed an unopposed motion for approval of collective action settlement with a copy of the proposed settlement agreement. (Doc. 28). Plaintiffs filed their brief in support on June 13, 2016. (Doc. 29).

## II.   DISCUSSION

"In 1938, Congress enacted the FLSA to protect covered workers from substandard wages and oppressive working hours." Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992) (*citing* Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The Fair Labor Standards Act provides that:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than

3

forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

29 U.S.C. §207(a)(1). Thus, employers covered by the FLSA must pay overtime compensation to employees who work for more than forty hours a week "unless one or another of certain exemptions applies." Packard v. Pittsburgh Transp. Cp., 418 F.3d 246, 250 (3d Cir. 2005).

The PMWA, like the FLSA, provides that employees shall receive overtime wages of "not less than one and a half times" their regular wage for any hours worked after forty in a work week. 43 P.S. §333.104(c). Pennsylvania courts have looked to federal law regarding the FLSA in applying the PMWA. Baum v. Astrazeneca LP, 372 F.App'x 246, 248, n. 4 (3d Cir. 2010) (citing Commonwealth of Pa. Dept. of Labor and Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa.Commw. 2003), aff'd, 859 A.2d 1253 (2004) (applying "federal case law" regarding the FLSA to a PMWA claim). The Pennsylvania courts have determined that "it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it." (Id.).

Plaintiffs move for court approval of their proposed settlement agreement as well as their proposed award of attorneys' fees. Defendant has concurred in plaintiffs' motion. The court will now discuss the proposed settlement agreement and the award of attorneys' fees and costs.

4

"Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Brown v. TrueBlue, Inc., 2013 WL 5408575, *1 (M.D.Pa. Sept. 25, 2013) (citing Cuttic v. Crozer–Chester Medical Center, 868 F.Supp.2d 464, 466 (E.D.Pa. 2012); *see also* Adams v. Bayview Asset Mgmt., LLC, 11 F.Supp.3d 474, 476 (E.D.Pa. 2014) (court indicated that Department of Labor supervision or court approval are the "only two ways that FLSA claims can be settled or compromised by employees," "[b]ecause of the public interest in FLSA rights").

The Third Circuit has not specifically addressed the factors which the district court should consider when approving FLSA settlements. However, district courts within this Circuit have followed the Eleventh Circuit's decision in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir.1982). *See* Kraus v. PA Fit II, LLC, 2016 WL 125270, *4, — F.Supp.3d —, (E.D.Pa. Jan. 11, 2016); Brown, 2013 WL 5408575, *1 (court applied the *Lynn's* Food standard). The court stated in *Lynn's Food*, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Cuttic, 868 F.Supp.2d at 466 (quoting Lynn's Food, 679 F.2d

at 1354). A bona fide dispute under the FLSA includes computation of back wages. *See* Lynn's Food, 679 F.2d at 1354. The court finds in the instant case that the proposed settlement agreement resolves a bona fide dispute. *See* Creed v. Benco Dental Supply Co., 2013 WL 5276109, at *1 (M.D.Pa. Sept. 17, 2013) (court held that a dispute was bona fide if it involves "factual issues rather than legal issues such as the statute's coverage and applicability.").

"When determining whether a proposed settlement agreement merits approval, the Court must first consider whether the agreement is fair and reasonable, and then proceed to determine whether it furthers or frustrates the implementation of the FLSA." Brown, 2013 WL 5408575, *1 (citation omitted). To determine whether an FLSA settlement agreement is fair and reasonable, "district courts have relied on the factors set out by the Third Circuit for approving class action settlements pursuant to Federal Rule of Civil Procedure 23." Brown, 2013 WL 5408575, *2 (citing Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975)). The factors specified by the Third Circuit in Girsh, 521 F.2d at 157–58, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Plaintiffs state that their proposed settlement agreement is fair and reasonable. It provides that defendant will pay plaintiffs a total amount of $23,750.00, with each plaintiff receiving the following specific amounts: Joseph DiClemente = $10,935.83; Jessica Giuricich Wills = $937.68; Nathan Bush = $3,014.74; Robert Vosper = $3,529.49; Aneta Lotrean = $2,815.62; and Karly Diehl = $2,516.65. Each of the plaintiffs consented to their respective payout amounts. The settlement agreement also provides that plaintiffs' counsel will receive fees and costs of $23,750.00 from defendant. The settlement agreement contains a release as well as a confidentiality provision. Once the court approves of the settlement agreement, the case will be dismissed with prejudice.

In their brief in support of their motion, (Doc. 29, at 8-11), plaintiffs address the *Girsh* factors seriatim and state: Factor 1, "absent settlement, both parties would have been required to dedicate significant time and resources to inter alia, filing pre-trial motions and preparing for the trial itself"; Factor 2, "[a]ll six Plaintiffs have signed the Agreement, ..., evidencing their approval of the settlement"; Factor 3, "mediation occurred after the close of discovery" and "the parties had a clear understanding of the evidentiary record and potential risks of proceeding to trial"; Factors 4-5, defendant had the defense "that it did not have actual or constructive knowledge of Plaintiffs' alleged off-the-clock work because it relied [on] the weekly excel spreadsheets that Plaintiffs completed" and that "even if Plaintiffs were able

to defeat [defendant's] merits defense, they still needed to prove their uncompensated overtime work hours based on a just and reasonable inference"; Factor 6, defendant states that this factor does not weigh in favor of settlement approval since this case only concerns six plaintiffs and "the risk of decertification is minimal compared to larger collectives in which decertification results in many members of the collective choosing not to pursue their claims on an individual basis"; Factor 7, this factor is "a wash and weighs neither in favor of nor against settlement" if the settlement is otherwise fair and reasonable; Factors 8-9, "plaintiffs' $23,750.00 recovery under the settlement represents slightly more than two-times the unpaid wages calculated in the Edit Audit Report Analysis" and if this case went to trial, "plaintiffs would have argued that the Edit Audit Report Analysis did not capture all of the off-the-clock work they performed."

Plaintiffs state that all but two of the *Girsh* factors weigh in favor of approval of the settlement agreement and that it represents "an excellent result for plaintiffs." Based on the record and the *Girsh* factors, the court finds that the proposed settlement agreement is fair and reasonable.

Next, the court must consider whether the settlement agreement furthers or frustrates the implementation of the FLSA in the workplace. Section 4 of the settlement agreement contains a release which provides that after defendant meets its payment obligations, plaintiffs release defendant from all legal or equitable claims arising prior to April 19, 2016 and alleging

8

unpaid wages or overtime pay under the FLSA and the PMWA as well as under any other law. Proposed release provisions run contrary to the FLSA if they are overly broad and the parameters of the FLSA claim waiver are unclear. Kraus, 2016 WL 125270, *12. The court finds that the release in the present agreement does not frustrate the implementation of the FLSA in the workplace since it is sufficient limited in nature and its parameters are clear.

Section 7 of the settlement agreement contains a confidentiality provision stating that plaintiffs agree that they will not communicate or disclose the "terms of this Agreement, or the circumstances leading up to this Agreement, to any persons other than his/her spouse, significant other, immediate family, attorney, accountant and/or tax consultant, or as otherwise required by law." However, plaintiffs can disclose that this case has been resolved without referencing the terms of the agreement. "There is 'broad consensus' that FLSA settlement agreements should not be kept confidential." Brown, 2013 WL 5408575, *3 (citation omitted); Kraus, 2016 WL 125270, *12 (confidentiality clauses are "a common basis for a court's rejection of a proposed [FLSA] agreement."). The confidentiality provision in this case does not contain any sanctions and does not allow defendant to retaliate against plaintiffs if they violate it. It also allows plaintiffs to disclose the fact that the case has ended as opposed to be dismissed based on failure to state cognizable claims, implying that they had valid claims under the FLSA. Thus, the confidentiality provision does not frustrate the

9

implementation of the FLSA in the workplace, in this case.

The FLSA also provides that the court "shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. §216(b). "Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." Kraus, 2016 WL 125270, *13 (citation omitted). "The percentage-of-recovery method awards a fixed portion of the settlement fund to counsel." Id. (citation omitted). "Courts have approved attorneys' fees in FLSA [collective and class action] settlement agreements 'from roughly 20-45%' of the settlement fund." Id. at *14. (citation omitted).The factors which the court considers under the percentage-of-recovery method to evaluate the award of attorneys' fees in common fund cases are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n. 1 (3d Cir. 2000) (citations omitted). These factors do not have to be "applied in a formulaic way" and, "[e]ach case is different, and in certain cases, one factor may outweigh the rest." Id.

In this case, plaintiffs' attorneys seek a fee, including costs, that is 50% of the $47,500 total settlement amount. Attached to plaintiffs' brief in support

10

of their motion, is the Declaration of R. Andrew Santillo, Esq., who is personally familiar with the involvement of his law firm's representation of plaintiffs in this case, namely, Winebrake & Santillo, LLC ("W&S"). He avers that "[a]s of June 8, 2016, W&S has dedicated 103.1 hours to this litigation resulting in a total fee lodestar of $42,172.00 when utilizing the hourly rates described in the fee schedule developed by Philadelphia Community Legal Services ("CLS") and used by that organization in seeking attorney's fees in statutory fee-shifting." He then specifies the hours worked on this case by each member of W&S and their fee based on their hourly rate. Santillo also states that "W&S incurred a total of $4,184.37 in costs and expenses in connection with this litigation."

Based on its review of Santillo's Declaration and the *Gunter* factors, all of which weigh in favor of approving the proposed award, the court in its discretion shall approve the requested attorneys' fees of $19,565.63 and $4,184.37 in costs as provided in the settlement agreement.

## III.   CONCLUSION

For the above reasons, plaintiffs' motion for approval of collective action settlement, (Doc. 28), is **GRANTED**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 7, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0596-01.wpd